# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| NEIL C. ANDRUS, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) 2:12-cv-00098-JCM -VCF<br>) |
| D.R. HORTON, INC., | ) **REPORT & RECOMMENDATION**<br>)<br>) **(Motion To Compel Arbitration #12 and** |
| Defendant. | ) **Motion To Stay Proceedings #13)**<br>)<br>) |

Before the court are defendant D.R. Horton, Inc.'s Motion To Compel Arbitration (#12) and Motion To Stay Proceedings (#13). Plaintiff Neil C. Andrus filed an Opposition (#17) and attached Exhibits (#18). Defendant filed a Reply in Support of its Motions. (#22). The court held a hearing on November 5, 2012.

## BACKGROUND

### A.   Procedural Background

On January 19, 2012, plaintiff Andrus filed his complaint against defendant D.R. Horton, Inc., alleging claims for (1) Violation of the Fair Labor Standards Act – Misclassification as an Independent Contractor and (2) Violations of Nevada Deceptive Trade Practices Statutes – N.R.S. §§ 598.0915 et. seq. and 598.0923 et. seq. (#1). On February 3, 2011, defendant D.R. Horton informed plaintiff that he was required to arbitrate his claim pursuant to a Mutual Arbitration Agreement (hereinafter "Arbitration Agreement")(#12 Exhibit A-1) between the parties. (#12 Exhibit B-1)(Letter to Plaintiff's Counsel). Plaintiff would not agree to arbitrate his claims. (#12 Exhibits B-2 and B-3). On February 22, 2012, the parties filed a stipulation and order to dismiss plaintiff's unfair trade practices claim (#8), which the court signed on February 27, 2012 (#9). On March 9, 2012, defendant filed a motion to compel arbitration and a motion to stay proceedings. (#12 and #13).

On May 4, 2012, plaintiff Andrus filed a proposed discovery plan and scheduling order. (#23). Plaintiff asserted that he filed the discovery plan on his own because defendant D.R. Horton "has determined that its Motion to Compel Arbitration and Stay Proceedings has alleviate[d] the need for a 26(f) conference or the filing of a discovery plan." *Id.* Plaintiff's discovery plan did not limit the scope of discovery permitted. *Id.* On May 8, 2012, defendant D.R. Horton filed an objection to plaintiff's proposed discovery plan and a request for stay and for attorneys' fees. (#24 and #25). On May 23, 2012, plaintiff Andrus filed an opposition. (#26). Defendant filed a reply on May 24, 2012. (#28).

On June 1, 2012, the court issued an order overruling defendant's objection (#24) to the proposed discovery plan and scheduling order (#23) and granting defendant's request to stay discovery pending the ruling on the motion to compel arbitration (#12) and stay (#13). (#29). The court also denied defendant's request for attorneys' fees. *Id.* On October 1, 2012, the case was reassigned to the Honorable James C. Mahan. (#31). On October 2, 2012, the motion to compel (#12) and motion to stay (#13) were referred to the undersigned, pursuant to Local Rule IB 1-4(e), for a report and recommendation. On October 6, 2012, the court issued a minute order scheduling a hearing on the motions (#12 and #13) for November 5, 2012. (#32).

**B.    Substantive Facts**

**1.    Arbitration Agreement**

Plaintiff began working for defendant as a warranty manager in 2004. (#1). During his employment, on February 1, 2006, the plaintiff and defendant executed the Arbitration Agreement as a condition of employment. (#12 Exhibit 1). Paragraph 1 of the Arbitration Agreement states that

> [E]mployee and Company, on behalf of their affiliates, successors, heirs, and assigns agree that all disputes and claims between them, including those related to Employee's employment with the Company and any separation therefrom, and including against the Company's affiliates, directors, employees or agents, shall be determined exclusively by final and binding arbitration before a single, neutral arbitrator as described herein, and that judgment upon the arbitrator's award may be entered in any court of competent jurisdiction. Claims subject to arbitration under this Agreement include without limitation

2

> claims for discrimination or harassment; wages, benefits, or other compensation; breach of any express or implied contract; violation of public policy; personal injury; and tort claims including defamation, fraud and emotional distress.

*Id.* Within paragraph 8 of the Arbitration Agreement, it states that "[t]his Agreement will remain in effect even after the termination of Employee's employment with the Company." *Id.* That paragraph also states that "[a]ny controversy over whether a dispute is arbitable or as to the interpretation of this Agreement with respect to such arbitration will be determined by the arbitrator." *Id.* The Arbitration Agreement sets forth those actions and disputes that are excluded from the agreement:

> Disputes and actions excluded from this Agreement are: (a) claims by Employee for workers' compensation or unemployment benefits; (b) claims for benefits under a Company plan or program that provides its own process for dispute resolution; (c) claims by either party for declaratory or injunctive relief relating to a confidentiality, non-competition, or similar obligation (any such proceedings will be without prejudice to the parties rights under this Agreement to obtain additional relief in arbitration with respect to such matters); and (d) actions to compel arbitration or to enforce or vacate an arbitrator's award under this Agreement, such action to be governed by the Federal Arbitration Act and the provisions of Section 8 of this Agreement.

*Id.* Paragraph 6 of the Arbitration Agreement states that "[t]he arbitrator may hear only Employee's individual claims and does not have the authority to fashion a proceeding as a class or collective action or to award relief to a group or class of employees in one arbitration proceeding. *Id.*

### 2. Plaintiff's Complaint

Plaintiff alleges that until February of 2009, he was considered an "employee" of defendant and "would receive wages as an employee, with the appropriate state, federal, health and other like deductions taken from his paycheck." (#1). Plaintiff was told by defendant in February 2009, that he would be "laid-off." *Id.* Plaintiff alleges that the Division President for defendant, Jim Frasier, told him that he should "procure a business license and then D.R. Horton would employ Plaintiff as an "independent contractor" paid on a piece-rate basis but without the attendant employment benefits such as health benefits, Social Security and OASDI contributions, unemployment and workers' compensation

insurance." *Id.* Plaintiff asserts in his complaint that he complied with this recommendation. *Id*

Plaintiff alleges that defendant "intentionally misclassified [p]laintiff as an independent contractor" beginning in February of 2009. *Id.* Plaintiff claims that his duties have not changed since his "misclassification as an independent contractor," and that he "continues to perform the exact same tasks as an Independent Contractor that he performed as a "regular," "W-2" employee." *Id.* Plaintiff alleges that he still conducts home inspections which are ordinarily done by employees and inspections for Nevada State Contractor's Board complaints filed against defendant. *Id.* Plaintiff also alleges that he monitors emergency calls, has been assigned and uses a company cell phone, has been given a company computer, has a company email address, signed correspondence with defendant's letterhead, is listed on the phone list as "Quality Control Manager," been provided business card with "D.R. Horton" logos on them, and is directly supervised by defendant's employee Dennis Traina. *Id.*

Plaintiff also alleges that he has been told by Human Resources that he was "intentionally misclassified by D.R. Horton as an "independent contractor."" *Id.* Plaintiff claims that he has suffered financial loss because of this misclassification, including paying out of pocket for health insurance (his wife suffers from cancer), being denied the attendant benefits such as 401k, dental, vision, unemployment insurance, workers' compensation insurance, Social Security, and OASDI matches required from an employer. *Id.* Under plaintiff's remaining claim for a violation of FLSA, he asserts that "[a]t all relevant times hereto, [p]laintiff was employed by [d]efendant as an **"employee"** within the meaning of §3(e)(1) of the FLSA, 29 U.S.C. §§ 203(d), 203(e)(1) and 203(g)," and that his job title was Warranty Manager. *Id.* (emphasis added).

Plaintiff also makes some reference to class allegations, by making statements throughout the first claim, such as "[d]efendant was [p]laintiff's "employer" and the employer of all similarly situated [p]laintiffs, if any, per the FLSA," and that he brings this action his own behalf and all other similarly situated persons, if any, who consent in writing to join in this action." *Id.*

4

# DISCUSSION

### A.  Defendant's Argument

#### 1.  FLSA Claim Falls Under The Arbitration Agreement

Defendant argues that the instant dispute falls under the Arbitration Agreement, and that the court should compel arbitration. (#12). Defendant asserts that the "nature of the dispute is employment-related," as the remaining claim for relief is under the FLSA, the "federal law that dictates what and how employees are paid." *Id.* Being that plaintiff's claim is that he was truly an employee misclassified as an independent contractor and that defendant failed to comply with FLSA regarding compensation, defendant argues that "[t]he broadly worded arbitration provision in the [Arbitration] Agreement [that] demands arbitration of "all disputes and claims between the parties," including, but not limited to those "relating to Employee's employment with the Company and any separation therefrom," encompasses his claims. *Id* (Exhibit A-1 Arbitration Agreement). Furthermore, defendant asserts, as the Arbitration Agreement survives even after termination, it does not matter if plaintiff was an employee or an actual independent contractor for purposes of determining whether to compel arbitration. *Id.*

#### 2.  The Arbitration Agreement is Enforceable

Plaintiff relied on a recent decision from the National Labor Relations Board (hereinafter "NLRB"), *D.R. Horton, Inc, and Michael Cuda,* 357 NLRB No. 184 (January 3, 2012) (hereinafter "*Cuda*"), in refusing to arbitrate the dispute. (#12). Defendant argues that this reliance is misplaced, because the decision "has no legal effect on this case," as (1) it has not yet been enforced[1] and (2) it has

---

[1] In order to be in effect, the NLRB must petition a court of appeals for enforcement of its decisions. *NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 893 (7th Cir. 1990) ("The Board ... still must go to a court of appeals and ask that court to issue an order enforcing the Board's order."). The decision has been appealed to the Fifth Circuit and is stayed. *D.R. Horton v. NLRB*, 5th Cir. Case 21 No. 12-60031 (filed Jan. 13,2012)(#12 Exhibit E).

5

no retroactive effect on pre-existing agreements.[2]  *Id.*   Defendant also asserts that the decision has no persuasive value, and that courts, pre-*Cuda* have rejected arguments that the NLRA barred agreements to arbitrate non-NLRA claims on individual and class bases,[3] and, post-*Cuda,* have rejected the analysis in *Cuda* as grounds to defeat an arbitration agreement.[4]

Defendant argues that *Sanders,* a recent California Federal Court case, is instructive here. (#12). Defendant asserts that in *Sanders*, "the [p]laintiff filed a putative class action for alleged violations of California labor laws and for executing two allegedly unconscionable contracts. *Sanders*, 2012 WL 523527 at *1. Defendants moved to enforce the arbitration agreement, which, like D.R. Horton's agreement, included a class action waiver that provided "that the parties specifically agree that no dispute may be joined with the dispute of another and agree that class actions under this arbitration provision are prohibited." *See Id* at *2. In granting the motion to compel arbitration, the Court found the arbitration clause was valid and encompassed the claims as alleged in the Complaint." *Id.*

Defendant argues that plaintiff's language inferring class allegations in the complaint (#1) does not "alter the effect of the Agreement," and that plaintiff has already conceded that there is no class. (#12 Exhibit B-3).  Once defendant insisted on arbitration, defendant asserts, plaintiff decided not to dismiss his class allegations.  *Id.*

---

[2] It is the responsibility of the NLRB, not federal courts, to determine in the first instance whether NLRB decisions have retroactive effect. *See NLRB v. Food Store Employees Union, Local 347*, 417 U.S. 1, 10 (1974)(reversing D.C. Circuit's retroactive application of new Board precedent "because the Board should be given the first opportunity to determine whether the new policy should be applied retroactively.").  Defendant asserts that the NLRB did not indicate that *Cuda* should apply retroactively.  (#12).

[3] *See, e.g., Grabowski v. C,H Robinson*, --- F. Supp. 2d ----, 2011 WL 4353998, at *7-8 (S.D. Cal. Sept. 19, 2011);*Valle v. Lowe's HIW, Inc*., No. 11-1489-SC, 2011 WL 3667441, at *5 (N.D. Cal. Aug. 22, 2011);*Palacios v. Boehringer Ingelheim Pharm*., 2011 WL 6794438, at *3 (S.D. Fl. Apr. 19,2011);*Slawienski v. Nephron Phamaceutical Corp.*, No. 10-CV-0460-JEC, 2010 WL 5186622, at *2 (N.D. Ga. Dec. 9, 2010).

[4] *See La Voice v. UBS Fin. Servs., Inc*., No. 11 CIV. 2308-BSJ-JLC, 2012 WL 124590, *6 (S.D.N.Y. Jan. 13, 2012);*See, e.g., Sanders v. Swift Transp. Co. of Arizona, LLC*, '-- F. Supp. 2d ----, No. 10-CV-03739 NC, 2012 WL 523527, *3 (N.D. Cal. Jan. 17, 2012); *Palmer v. Convergys Corp.,* No. 7:1O-CV-145 HL, 2012 WL 425256, *3 (M.D. Ga., Feb. 9, 2012).

### B.     Plaintiff's Argument

Plaintiff argues that this is a "wage-and-hour" case pursuant to which plaintiff claims defendants intentionally misclassified him as an "independent contractor" after previously working for defendant as an employee. (#17).  Plaintiff asserts that he never signed a contract requiring arbitration for a dispute concerning his status as a (misclassified) independent contractor. *Id.*  Plaintiff concedes that he signed the Arbitration Agreement, but stresses that he signed it when he was an employee. *Id.*  The Arbitration Agreement, plaintiff asserts, was rendered void nearly two months ago. *Id.*  Plaintiff argues that defendant cannot get the benefit of the bargain it struck when plaintiff was an "employee" while trying to avoid the consequences of being plaintiff's "employer." *Id.*

Plaintiff also contends that the Arbitration Agreement is not enforceable because it is substantively and procedurally unconscionable, as it (1) prohibits employees from joining together for mutual aid and protection to address grievances and other issues concerning the terms and conditions of their employment, and (2) it improperly implies that the employees cannot petition the NLRB to address grievances. *Id.*  Since the Arbitration Agreement is unconscionable, it must be modified or rescinded, plaintiff asserts. *Id.*  To modify the agreement, there must be consideration. *Id.*  Plaintiff argues that as there is no consideration, no modification can occur. *Id.*

#### 1.     *Cuda* Decision

Plaintiff asserts that the clause in Arbitration Agreement before this court is exactly the same as the one at issue before the NLRB in *Cuda*. (#17).  Although *Cuda* is not binding, plaintiff argues that it is persuasive authority, especially as it addressed the exact agreement at issue here. *Id.*  Plaintiff asserts that defendant has cited no authority to support its contention that the decision has no "legal effect." *Id.*  Plaintiff also asserts that he does not believe that the retroactive application of the NLRB's decision is at issue, and that the decision "sufficiently addresses [d]efendant's wrongdoing." *Id.*

Plaintiff walks the court through the decision in *Cuda,* and argues that the same two findings should also be found here: (1) the Arbitration Agreement's prohibition against concerted group effort

7

violates plaintiff's substantive statutory rights, and (2) the Arbitration Agreement as drafted would lead employees to believe that they were not permitted to petition the NLRB to redress their grievances. *Id.*

### 2.   The Arbitration Agreement is Unconscionable

Plaintiff asserts that "a court will invalidate an arbitration agreement as unconscionable if both procedural and substantive unconscionability is present. *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 96 P.3d 1159, 1162 (2004). However, the more egregious the substantive unconscionability the less procedural unconscionability is needed to invalidate the contract. *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164, 1169-70 (Nev. 2010). *Id.*" (#17). Substantive unconscionability is found when the agreement fails to preserve statutory rights and violates public policy. *Gonski*, 245 P.3d at 1169-70. An agreement is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. *D.R. Horton,* 96 P.3d at 1162.

Plaintiff asserts that the Arbitration Agreement is substantively unconscionable, as the NLRB already held that the very agreement violates public policy and does not preserve an employees statutory rights. (#17). Although that decision is not binding, plaintiff asserts that it is certainly persuasive. *Id.* Plaintiff notes that none of the decisions relied upon by the defendant stand for the proposition that the court should disregard that decision. *Id.* Plaintiff states that in the *Sanders* case relied on by defendant, the court did not decline to follow the NLRB's decision, rather it stated that because "Sanders [plaintiff] makes no allegations in his complaint or in his opposition to Defendants' motion that his claims against Defendants are covered by the NLRA, Horton is inapposite and therefore the Court will not consider it in determining the motion." *Id* (quoting *Sanders v. Swift Transp. Co. of Arizona LLC*, 2012 WL 523527, 1 (N.D. Cal. Jan. 17, 2012). Plaintiff states that he is "certainly raising the issue that the NLRA applies to this case. *Id.*

Plaintiff asserts that the Arbitration Agreement is procedurally unconscionable, because

8

defendant has all the bargaining power, the agreement was a condition to employment, and there was no opportunity to negotiate its terms. (#17). Plaintiff argues that "the substantive unconscionabilty is so strong that the procedural hurdle should be set at an exceedingly low level." *Id.*

### 3.    No Consideration for Modification

Plaintiff argues that the Arbitration Agreement, which is unconscionable, cannot be modified, as there is no consideration. (#17)(relying on *Baldonado v. Wyn Las Vegas, LLC*, 124 Nev 951, 194 P.3d 96, 105 (2008)(In Nevada an employer can modify an employment contract, so long as valid consideration is provided.). Plaintiff no longer works for defendant, and in an employment context, consideration for modification is continued employment, plaintiff states. *Id* at 106. Further, if the Arbitration Agreement in rescinded, plaintiff asserts, as the NLRB ordered, it is not enforceable against plaintiff. (#17).

Plaintiff asserts that "[a]ny claims he had arising out of his "employment" with D.R. Horton could be compelled to mandatory arbitration. This is not a dispute about what happened during employment. It is a dispute regarding what "type" of 'employment' D.R. Horton and Andrus agreed to following Andrus' cessation of "employee"-like work in Feb. 2007." *Id.* Plaintiff also asserts that D.R. Horton's Arbitration Agreement is simply only enforceable as to employment disputes, i.e., traditional master-servant relationships. The Arbitration Agreement lacks any consideration insofar as the misclassification is concerned." *Id.*

### C.    Defendant's Response

Defendant asserts that the Arbitration Agreement is unambiguous and requires plaintiff to submit *all claims,* including those contained in the complaint and those that arose after termination, to binding arbitration. (#22). The defendant asserts that if the court is concerned about ambiguity, the court should resolve the issue is favor of arbitrability. *Id* (citing *Clark County Public Employees Assoc. v. Pearson*, 798 P.2d 136, 138 (Nev. 1990) (emphasis added) (quoting *Int'l Assoc. Firefighters v. City of Las Vegas,* 764 P.2d 478, 481, n. 6 (1988)); *see also Velasquez v. SB. Restaurant Co.*, 2010 WL 4683720, at *4 (D.

Nev. Nov. 9, 2010); *Inlandboatsmen*, 279 F.3d at 1078; *Moses H Cone Memorial Hasp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983).

Defendant also asserts that the class and collective action waiver is valid and enforceable under controlling law. *Id.*[5] With regard to the retroactive effect of the NLRB's decision, defendant argues that since the NLRB did not indicate that it intended on the decision to apply retroactively, the court should not apply it here.[6] (#22). Defendant points out with regard to *Sanders,* that "[p]laintiff's [c]omplaint does not even mention the NLRA, let alone assert violations of or seek redress for violations of the NLRA. Instead, as was the case in *Sanders*, [p]laintiff asserted only federal and state wage and hour claims. *ld* Because the nature of the underlying claims in this case (violations of the FLSA) are so fundamentally different from the alleged violations in [*Cuda*] (violations of the NLRA), the [*Cuda*] decision is inapplicable." *Id*. Defendant also points out two Supreme Court decisions where the court "expressly permitted or otherwise indicated clear acceptance of arbitration agreements that include class and/or collective action waivers*." See AT&T Mobility v. Conception*, 563 U.S. --, 131 S. Ct. 1740 (2011); *Stolt-Neilsen, NA. v. AnimalFeeds Int'l. Corp.,* 559 U.S. ---, 130 S.Ct. 1758 (2010).

Defendant argues that plaintiff has not met his burden of demonstrating that the Arbitration Agreement is unconscionable, either procedurally or substantively. (#22)(citing *L&M Creations*, 2011 WL 1103636, *6 (plaintiff bears the burden of proving unconscionability). Defendant asserts that

---

[5] (citing *Grabowski v. C.R Robinson,* --- F. Supp. 2d ----, 2011 WL 4353998, at *7-8 (S.D. Cal. Sept. 19, 2011) (finding that there was no violation of the NLRA in a binding arbitration provision that precluded class actions); *Valle v. Lowe's HIW, Inc*., 2011 WL 3667441, at *5 (N.D. Cal. Aug. 22, 2011) (refusing to preemptively invalidate arbitration agreement with class action waiver); *Palacios v. Boehringer Ingelheim Pharm*., 2011 WL 6794438, at *3 (S.D. Fl. Apr. 19, 2011); (finding that a waiver precluding class or collective actions did not per se violate the NLRA); *Slawienski v. Nephron Phamaceutical Corp*., No. 10-CV-0460-JEC, 2010 WL 5186622, at *2 (N.D. Ga. Dec. 9, 2010) (finding no violation of the NLRA in an arbitration provision that prohibited class or collective actions)).

[6] (citing *Burkhard v. Intuit, Inc*., 2009 WL 528603, * 11 (D. Ariz. Mar. 2, 2009) (refusing to retroactively apply the Americans With Disabilities Amendment Act ("ADAAA") in a manner which would increase liability for past acts where there was no indication that the amended law should apply retroactively)); See *NLRB v. Food Store Employee's Union,* 417 U.S. 1, 10 (1974) (holding that Board should be given first opportunity to decide whether a new policy should be applied retroactively).

1  plaintiff did not sufficiently address the issue of procedural unconscionability, as all plaintiff argued was
2  that "the Agreement was a procedurally unconscionable adhesion contract regarding a non-negotiable
3  "condition of employment.""  *Id.*  Defendant argues that Nevada and Ninth Circuit courts examine
4  substantive unconscionability by looking at six factors: (1) division of costs between the parties; (2)
5  whether there is a neutral arbitrator; (3) the extent of allowed discovery; (4) the types of relief available;
6  (5) whether and to what degree the terms infringe upon substantive rights; and (6) whether there is a
7  written award. (#22); *Velasquez,* 2010 WL 4683720 at *3.  Defendant asserts that plaintiff does not
8  address these factors, and only relies on the NLRB's decision, which is not binding authority, to argue
9  that the Arbitration Agreement should be held void.  *Id.*

10  **E.     Discussion**
11  **1.     Federal Arbitration Act**

12  The Federal Arbitration Act ("FAA") requires courts to compel arbitration of any controversy
13  covered by the terms of a valid written agreement to arbitrate.  In *Dean Witter Reynolds, Inc. v. Byrd*,
14  470 U.S. 213, 220-21 (1985), the court stated that "[t]he [Federal] Arbitration Act provides that written
15  agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and
16  enforceable, save upon such grounds exist at law or in equity for the revocation of any contract.' 9
17  U.S.C. § 3. By its terms, the Act leaves no place for the exercise of discretion by a district court, but
18  instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to
19  which an arbitration agreement has been signed."

20  The FAA is a "liberal federal policy favoring arbitration agreements," and court have held that
21  "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*
22  *H Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d
23  765 (1983). Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been
24  made and has not been honored," and the dispute falls within the scope of that agreement, the Court
25  must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400, 87 S.Ct.

1801, 18 L.Ed.2d 1270 (1967).

### 2.     Plaintiff's Complaint-Arbitration Agreement

There are two issues for the court to decide: (1) does the Arbitration Agreement encompass plaintiff's claims, and (2) is the Arbitration Agreement enforceable.

#### a.     Arbitration Agreement Encompass Plaintiff's Claims

With regard to the first issue, the court finds that the Arbitration Agreement's broad language mandates that the plaintiff's claims be arbitrated. *Moses H Cone Memorial*, 460 U.S. at 24-25 (any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration). The Arbitration Agreement specifically states that "Claims subject to arbitration under this Agreement include without limitation claims for discrimination or harassment; *wages*, *benefits*, *or other compensation*; breach of any express or implied contract; violation of public policy; personal injury; and tort claims including defamation, fraud and emotional distress." (#12 Exhibit A-1)(emphasis added).

Plaintiff claims that he has "been denied the attendant benefits such as 401(k)1, dental, vision, unemployment insurance, workers' compensation insurance" because of the defendant's misclassification of him as an independent contractor. (#1). The complaint alleges that his claim arises "from [d]efendant's violation of the FLSA, 29 U.S.C. §201, *et seq.*, for its misclassification of and consequent *failure to pay wages and benefits* to Plaintiff." *Id* (emphasis added). The complaint also asserts that defendant "willfully violated the FLSA by refusing to pay [p]laintiff...all lawful wages, including overtime wages (if any), attendant benefits and perquisites, for all time worked in excess of forty (40) hours per week." *Id*. Thus, the claim falls squarely within the Arbitration Agreement, which covers disputes relating to "wages, benefits, or other compensation." (#1 and #12 Exhibit A-1).

Plaintiff argues that the case is about the misclassification, and that the Arbitration Agreement does not specifically mention misclassification. (#17). The court finds, however, that since the alleged misclassification results in a dispute over wages etc, the Arbitration Agreement applies. *Moses H Cone Memorial*, 460 U.S. at 24-25. The Arbitration Agreement also expressly states that "[t]his Agreement

12

1  will remain in effect even after the termination of Employee's employment with the Company." (#12
2  Exhibit A-1).  Therefore, even though plaintiff no longer works for defendant, the Arbitration
3  Agreement and the terms thereof are still in effect.

### b.   Arbitration Agreement Enforceable

The NLRB's decision, although arguably persuasive, is not controlling law.  *See P\*I\*E Nationwide, Inc*., 894 F.2d at 893 ("The Board ... still must go to a court of appeals and ask that court to issue an order enforcing the Board's order.").  The court must examine whether the Arbitration Agreement (#12 Exhibit A-1) is enforceable by looking at binding precedent.  The plaintiff has the burden of demonstrating the procedural and substantive unconscionability of the Arbitration Agreement. *L&M Creations*, 2011 WL 1103636, \*6.  As plaintiff's only support for the argument regarding the substantive unconscionability is the NLRB's decision, and the only argument regarding the procedural unconscionability is that the defendant had all the bargaining power (#17), plaintiff has not met this burden.  *Id.*

With regard to the issue of whether arbitration agreements that include class and/or collective action waivers are lawful, defendant cited to two Supreme Court cases, as well as other cases, that addressed this issue: *AT&T Mobility v. Conception*, 563 U.S.---, 131 S.Ct. 1740 (2011) and *Stolt-Neilsen, NA. v. AnimalFeeds Int'!. Corp., 559 U.S. ---,* 130 S.Ct. 1758 (2010).

In *AT&T Mobility v. Conception*, 563 U.S. --, 131 S.Ct. 1740 (2011) the court held that the Federal Arbitration Act preempts California's judicial rule regarding the unconscionability of class arbitration waivers in consumer contracts, abrogating *Discover Bank v. Superior Court*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100.  The court stated that the "overarching purpose of the FAA...is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *AT&T Mobility LLC*, 563 U.S. —, 131 S. Ct. at 1748.

13

1       The court went on to mention its decision in *Stolt-Neilsen, NA. v. AnimalFeeds Int'l. Corp., 559
2   U.S. ---,* 130 S.Ct. 1758 (2010), and call it "instructive" on the issue. *Id* at 1750. "In that case we held
3   that an arbitration panel exceeded its power under § 10(a)(4) of the FAA by imposing class procedures
4   based on policy judgments rather than the arbitration agreement itself or some background principle of
5   contract law that would affect its interpretation. 559 U.S., at ——, 130 S.Ct. at 1773–1776. We then
6   held that the agreement at issue, which was silent on the question of class procedures, could not be
7   interpreted to allow them because the "changes brought about by the shift from bilateral arbitration to
8   class-action arbitration" are "fundamental." *Id.*, at ——, 130 S.Ct. at 1776." *Id.*

9       The court notes that the plaintiff admitted in correspondence (#12 Exhibits B-2 and B-3) and
10  during the hearing that the action is not currently a class action. Defendant represented during the
11  hearing that there is no class and that plaintiff is the only individual who worked for defendant that
12  could allege similar claims. Applying the principles in the Supreme Court cases discussed above, the
13  court finds that, under the FAA's purpose of "ensur[ing] the enforcement of arbitration agreements
14  according to their terms," the Arbitration Agreement (#12 Exhibit A-1) at issue may limit the arbitration
15  of class or collective claims and is enforceable. *See AT&T Mobility LLC*, 131 S. Ct. at 1748.

16      As the court pointed out during the hearing, paragraph 8 of the Arbitration Agreement states that
17  "[a]ny controversy over whether a dispute is arbitable or as to the interpretation of this Agreement with
18  respect to such arbitration will be determined by the arbitrator." (#12 Exhibit A-1). Plaintiff argued
19  during the hearing that the NLRB's decision addressed this issue in stating that "the right allegedly
20  violated *by the MAA* is not the right to be paid the minimum wage or overtime under the FLSA, but the
21  right to engage in collective action under the NLRA." *Cuda,* 357 NLRB at 10. Plaintiff argued in his
22  opposition that the dispute is not subject to arbitration because (1) plaintiff signed the Arbitration
23  Agreement as an employee, and the current dispute is "concerning his status as (misclassified)
24  independent contractor," and (2) the Arbitration Agreement itself is substantively and procedurally
25  unconscionable, as "it prohibits employees from joining together for mutual aid and protection to

14

address grievances and other issues concerning the terms and conditions of their employment" and "improperly implies that the employees cannot petition the [NLRB] to address grievances." (#17). Defendant argues that the plaintiff's claims are arbitable, as the Arbitration Agreement covers his claims and is not unconscionable. (#12 and #22). There is a controversy, therefore, regarding whether plaintiff's claims are arbitable. The court finds that the arbitrator can adequately address whether plaintiff's claims are arbitable, and that it is appropriate to submit the issue to the arbitrator for that determination.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that the defendant D.R. Horton, Inc.'s Motion To Compel Arbitration (#12) and Motion To Stay Proceedings (#13) should be GRANTED. The court should stay the proceedings and order the parties to arbitrate plaintiff's claims. This recommendation is *without prejudice* to plaintiff pursuing his arguments against arbitrability before the arbitrator.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 5th day of November, 2012.

_____
**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**

15